TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00394-CV






Herbert Friar, Appellant




v.




Mike Moses, State Commissioner of Education, in His Official Capacity Only;

and Austin Independent School District, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 97-13999, HONORABLE MARY PEARL WILLIAMS, JUDGE PRESIDING







 Appellant Herbert Friar ("Friar") seeks a reversal of a district court judgment
affirming a decision by the Commissioner of Education ("Commissioner"). After an
administrative hearing, the Commissioner found that the decision by the Austin Independent
School District Board of Trustees ("Board") to revoke Friar's assault leave and to charge five
days against his accrued personal leave was supported by substantial evidence. The district court
affirmed. Friar raises two issues on appeal. First, Friar alleges that the grievance procedures
resulting in revocation of assault leave denied him due process. Second, Friar alleges that the
Commissioner's decision is not supported by substantial evidence. We will affirm the decision
of the Commissioner and the judgment of the district court.


Assault Leave

 The Texas Education Code provides that school district employees who are
assaulted in the course of their regular duties may receive up to two years "assault leave" to
recuperate from physical injuries. See Tex. Educ. Code Ann. § 22.003(b) (West Supp. 2000). 
This leave is to be provided in addition to any accrued personal leave. See id. School districts
must provide assault leave benefits to supplement workers' compensation benefits so that
employees on assault leave do not suffer any loss of wages. See id. The statute states:


At the request of an employee, the school district must immediately assign an
employee to assault leave and, on investigation of the claim, may change the
assault leave status and charge the leave against the employee's accrued personal
leave or against an employee's pay if insufficient accrued personal leave is
available. 



Id. At the heart of this appeal is the meaning of the phrase "on investigation of the claim." What
type of investigation is required when assault leave status is changed and the time charged against
accrued personal leave? When should the Commissioner reverse the district's decision because
it is not supported by substantial evidence? These are the issues we are called upon to decide.


Background

 In November 1995, Friar was performing his duties as a substitute teacher in the
business department at Travis High School in the Austin Independent School District ("AISD"). 
The lesson plans called for students to change classrooms during the period, and Friar instructed
them to do so at the appropriate time. When C.J. refused to leave the room, Friar approached
her and again instructed her to leave. Eventually, Friar removed C.J.'s paper from a typewriter,
prompting her to pack her book bag to leave. When C.J. swung the bag over her shoulder, it
struck Friar, who was standing behind her. The impact aggravated a previous back injury Friar
had suffered. He requested, and was placed on, assault leave for five days.

 Based on its subsequent investigation, the administration at Travis High School
concluded that the incident was an accident rather than an assault and deducted five days from
Friar's accrued personal leave. Friar filed a grievance requesting that his personal leave be
reinstated. Pursuant to AISD grievance policy, three administrative conferences were held, each
resulting in denial of Friar's request. This entitled Friar to an opportunity to present his grievance
to the Board. At the grievance hearing, the Board considered the following: (1) argument by
Friar; (2) argument by Friar's counsel; (3) a report by Jerry Jarmon, Travis High School assistant
principal; (4) a report by AISD police Sergeant Scott Shauger; (5) AISD leave and grievance
policies; (6) related correspondence; and (7) affidavits and statements by witnesses. The Board
did not act on Friar's grievance. This lack of response was, in effect, a denial of Friar's request
to have his personal leave reinstated. See Professional Ass'n of College Educators v. El Paso
County Community Dist., 678 S.W.2d 94, 96 (Tex. App.--El Paso 1984, writ ref'd n.r.e.).

 Friar appealed the Board's adverse decision to the Commissioner of Education
pursuant to section 7.057 of the Texas Education Code. The Commissioner upheld the Board's
decision based upon a substantial evidence review of the record. Friar petitioned the district court
for judicial review, and the court issued a final judgment affirming the Commissioner's decision. 
Friar appeals.


Appeals to the Commissioner

 Friar bases this appeal, in part, on his interpretation of section 7.057 of the Texas
Education Code, which sets forth the procedure for appeals to the Commissioner. The statute
states:


(c) In an appeal against a school district, the commissioner shall issue a decision
based on a review of the record developed at the district level under a
substantial evidence standard of review.


 . . . .


(f) In this section:


 (1) "Record" includes, at a minimum, an audible electronic recording or
written transcript of all oral testimony or argument.



Tex. Educ. Code Ann. § 7.057(c), (f) (West 1996).


Due Process

 The Board can change assault leave status only "on investigation of the claim." 
Id. § 22.003(b). The Commissioner must base decisions on a "review of the record developed
at the district level." Id. § 7.057(c). This "record" must contain, at a minimum, a recording or
transcript of "all oral testimony or argument." Id. § 7.057(f) (emphasis added). Essentially,
Friar contends that by requiring an "investigation" and the preservation of a "record," and by
allowing "testimony," the Legislature has expressed the intent that assault leave status be revoked
only after the Board conducts a full-scale evidentiary, trial-type hearing at which testimony must
be presented and only admissible evidence is considered. (1) In the alternative, Friar argues that the
Board is incapable of providing due process on his grievance. He argues that at a minimum, due
process requires an impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 46 (1975). 
Friar contends that the Board has a pecuniary interest in denying his assault leave, and thus cannot
serve as an impartial decision-maker. He concludes that the district court must provide a trial de
novo on whether he is entitled to assault leave. We decline the invitation to adopt Friar's
interpretation of the statute or his due process argument.

 The Education Code states that the Board can revoke assault leave only after
conducting an "investigation," but the term is not defined. See Tex. Educ. Code Ann.
§ 22.003(b). However, the statute gives no special remedy to a teacher who is dissatisfied with
the procedures followed in conducting such an investigation. Every person who is "aggrieved by 
actions or decisions of any school district board of trustees that violate the school laws of this
state" has the exact same right to appeal to the Commissioner. Id. § 7.057(a)(2)(A) (West 1996). 
In each such appeal, the Commissioner must review "an audible electronic recording or written
transcript of all oral testimony or argument." Id. § 7.057(f). Thus, school districts must, at a
minimum, conduct proceedings that will generate a recording or transcript of oral testimony or
argument, in anticipation of possible review by the Commissioner. There is nothing in the statute
to indicate that the Legislature intended to provide procedural protections to teachers aggrieved
by denial of assault leave that exceed those protections provided to teachers aggrieved by any
other school board decision. Because there is no language that explicitly requires a full-scale
evidentiary, trial-type hearing by the Board when it considers assault leave status, we conclude
that the same procedures provided for hearing other grievances will satisfy the requirements of
due process for grievances regarding assault leave.

 School boards have been given broad power and discretion in conducting school
district business. See id. § 7.003 (West 1996); Ysleta Indep. Sch. Dist. v. Meno, 933 S.W.2d
748, 752 (Tex. App.--Austin 1996, writ denied). The Education Code does not dictate the
procedure for resolving teacher grievances at the district level. This function is left to the wisdom
of local school boards. See Tex. Educ. Code Ann. § 7.003 ("An educational function not
specifically delegated to the agency or the board under this code is reserved to and shall be
performed by school districts or open-enrollment charter schools."). The AISD has developed
policies and procedures regarding employee grievances, which include three levels of
administrative conferences and presentment to the Board. Friar filed his grievance in accordance
with AISD policy and does not complain that AISD policy was violated. He argued before the
Board, and at that time "an audible electronic recording . . . of all . . . argument" was made in
satisfaction of the Education Code. Id. § 7.057(f). The Board has produced exactly the type of
record required by the statute. Friar argues that eyewitness testimony must be part of the record
reviewed by the Commissioner. A careful reading of the statute reveals that if there is oral
testimony it must be part of the record reviewed by the Commissioner. However, oral testimony
is optional. See id. ("'Record' includes . . . all oral testimony or argument."). Friar and his
attorney presented argument to the Board, and this argument was preserved in the record reviewed
by the Commissioner. Furthermore, we find it significant that nowhere in this record do we find
a request for oral testimony by Friar or his attorney. Friar availed himself of the AISD grievance
procedure by filing affidavits to support his request. Friar insisted on oral testimony and the
opportunity to cross-examine witnesses only after the grievance process failed to produce the
result he was seeking.

 While the Legislature has mandated that assault leave be revoked only after
"investigation," the scope of the investigation and procedures for conducting such an investigation
have been left to the discretion of local school boards. The Board must develop a "record" to
support its decision, but section 7.057(f) sets forth the minimum requirements of such a record. 
See id. § 7.057(f). The record must contain any oral testimony presented, but such testimony is
not mandatory. The Board's investigation and grievance procedure complied with the
requirements of the Education Code and provided Friar all the process he was due.

 In the alternative, Friar alleges that the Board's pecuniary interest in saving the
expense of assault leave benefits disqualifies the Board as an impartial decision-maker. Friar cites
cases standing for the proposition that, at a minimum, due process requires an impartial decision-maker. See Withrow, 421 U.S. at 46. He states that the Board will be loath to pay up to two
years' salary to a teacher who is not teaching. He contends that this renders the Board incapable
of arriving at an impartial determination of whether assault leave should be revoked. Essentially,
Friar argues that the Board should be disqualified from deciding this dispute because a decision
favorable to Friar would result in an expense to AISD. Of course, this is true of many decisions
for which the Board is responsible. If the Board, as an entity, is deemed biased whenever a
decision could have a financial impact on AISD, it would no longer be able to set salaries and
benefits for district employees, approve capital improvements to schools, enter into contracts with
companies that provide services to the district, or hear most employee grievances. Each of these
decisions has a financial impact on AISD and yet is within the ambit of Board discretion.

 We hold that Friar has not overcome the "presumption of honesty and integrity in
those serving as adjudicators." See id. at 47. Board members are "constitutionally unacceptable"
only if they have a "direct personal, substantial, and pecuniary interest in the outcome" of Friar's
hearing. Valley v. Rapides Parish Sch. Bd., 118 F.3d 1047, 1052 (5th Cir. 1997) (emphasis
added). In order for any Board member to be disqualified for conflict of interest, the record
would have to reflect that the individual had a personal financial stake in the decision or some
personal bitterness toward Friar. See Hortonville Joint Sch. Dist. No. 1 v. Hortonville Educ.
Ass'n, 426 U.S. 482, 491 (1976). The record must show that the Board or its individual members
were actually, not merely potentially, biased against Friar. See Megill v. Board of Regents, 541
F.2d 1073, 1079 (5th Cir. 1976); United Indep. Sch. Dist. v. Gonzalez, 911 S.W.2d 118, 126
(Tex. App.--San Antonio 1995, writ denied). This record contains no evidence that any individual
Board member had a "direct personal, substantial, and pecuniary interest in the outcome" of
Friar's hearing. Valley, 118 F.3d at 1052. There is no evidence in the record of any personal
animosity between Friar and the Board or any of its members. Friar failed to show that the Board
or any of its members were not "capable of judging . . . fairly on the basis of [the]
circumstances." Hortonville, 426 U.S. at 493. Due process does not afford Friar the right to
have his grievance decided by a body other than the Board. See id. at 497.


Substantial Evidence

 Appeals to the Commissioner are decided under the substantial evidence standard
of review. See Tex. Educ. Code Ann. § 7.057(c). Friar argues that the substantial evidence
standard of review allows the Commissioner to affirm the Board's decision only if it is based on
evidence that would be admissible at trial. He maintains that documentary information that is not
presented in person, under oath, and subject to cross-examination is essentially "no evidence." 
He contends that a Board decision based on such documentary information must be reversed for
lack of substantial evidence. Friar misconstrues the meaning of the substantial evidence standard
of review.

 The substantial evidence standard of review is a reasonableness or rational basis
test. See El Paso v. Public Util. Comm'n, 883 S.W.2d 179, 185 (Tex. 1994). The Commissioner
reviews the reasonableness of the Board's decision, not the correctness of its decision. See id. 
The test is not whether the Board reached the correct conclusion, but whether some reasonable
basis exists in the record for its action. See id.; Texas Health Facilities Comm'n v. Charter
Medical-Dallas, Inc., 665 S.W.2d 446, 452 (Tex. 1984). The Commissioner may not substitute
his judgment for that of the Board and may consider only the record on which the Board based
its decision. See El Paso, 883 S.W.2d at 185; Tex. Educ. Code Ann. § 7.057(c). "The findings,
inferences, conclusions, and decisions of [the Board] are presumed to be supported by substantial
evidence, and the burden is on the contestant to prove otherwise." El Paso, 883 S.W.2d at 185. 
This burden is not met by a showing that the evidence preponderates against the Board's decision. 
See Charter Medical-Dallas, 665 S.W.2d at 452. If substantial evidence would support either
affirmance or reversal of the Board's findings, the Commissioner must affirm the Board's
decision. See id. at 453. Substantial evidence review does not dictate an examination of the
admissibility of the evidence forming the basis for the Board's decision.

 It is undisputed that C.J. hit Friar with her book bag and that Friar immediately
asked, "Do you realize you just hit me?" At the grievance hearing, the Board considered the
following sources of information: (1) argument by Friar; (2) argument by Friar's counsel; (3) a
report by Jerry Jarmon, Travis High School assistant principal; (4) a report by AISD police
Sergeant Scott Shauger; (5) AISD leave and grievance policies; (6) related correspondence; and
(7) affidavits and statements by witnesses. The Commissioner's review is limited to the question
of whether the record revealed a reasonable basis for concluding that this incident was an
accident. (2) See id. at 452. While C.J. admitted that Friar angered her, she maintained that she
did not know she had hit him until he asked, "Do you realize you just hit me?" The fact that
Friar asked the question is itself revealing. It appears that Friar recognized that C.J. did not even
know she had struck him. AISD personnel who interviewed Friar, C.J., and other witnesses
concluded that this was an accident. If the record contains evidence that would support an
affirmance or reversal of the Board's findings, the Commissioner must affirm the Board's
decision. See id. at 453. The record contains a reasonable basis for the Board's decision that this
incident was an accident. Thus, the Commissioner was correct in affirming the Board's decision.


Conclusion


 Having determined that the record developed by the Board and considered by the
Commissioner fulfilled the requirements of section 7.057(f) of the Education Code and that
substantial evidence exists to support the Board's decision, we affirm the Commissioner's decision
and the judgment of the district court.



 

 Mack Kidd, Justice


Before Justices Jones, Kidd and Patterson

Affirmed

Filed: May 11, 2000

Do Not Publish
1. A claimant has a right to the due process protections of the Fourteenth Amendment only
when a liberty or property interest is at stake. Because we conclude that Friar received due
process, it is not necessary for us to decide whether the assault leave statute creates a vested
property right.
2. All parties assumed that whether an assault occurred was properly determined by an
application of the Penal Code definition of "assault" to C.J.'s conduct. The Commissioner
concluded that C.J. did not act with the requisite mental state to constitute assault under the Penal
Code. Specifically, the Commissioner found that C.J. did not act intentionally, knowingly, or
recklessly. The criminal law punishes conduct that is based on varying degrees of culpability. 
The focus is on the criminal defendant's intent. We note that culpability of the student is probably
not the proper focus of an investigation under section 22.003(b) of the Education Code. The focus
of such an investigation ought to be whether the teacher received a bodily injury as a consequence
of student conduct. The goal of the investigation should not be determining whether the student
is criminally or even civilly liable for assault. Whether the student could be charged with a crime
or sued by the employee is irrelevant to determining whether the employee suffered physical
injury that warrants assault leave for the purpose of recuperating. However, this issue is not
before us for determination.



 record on which the Board based
its decision. See El Paso, 883 S.W.2d at 185; Tex. Educ. Code Ann. § 7.057(c). "The findings,
inferences, conclusions, and decisions of [the Board] are presumed to be supported by substantial
evidence, and the burden is on the contestant to prove otherwise." El Paso, 883 S.W.2d at 185. 
This burden is not met by a showing that the evidence preponderates against the Board's decision. 
See Charter Medical-Dallas, 665 S.W.2d at 452. If substantial evidence would support either
affirmance or reversal of the Board's findings, the Commissioner must affirm the Board's
decision. See id. at 453. Substantial evidence review does not dictate an examination of the
admissibility of the evidence forming the basis for the Board's decision.

 It is undisputed that C.J. hit Friar with her book bag and that Friar immediately
asked, "Do you realize you just hit me?" At the grievance hearing, the Board considered the
following sources of information: (1) argument by Friar; (2) argument by Friar's counsel; (3) a
report by Jerry Jarmon, Travis High School assistant principal; (4) a report by AISD police
Sergeant Scott Shauger; (5) AISD leave and grievance policies; (6) related correspondence; and
(7) affidavits and statements by witnesses. The Commissioner's review is limited to the question
of whether the record revealed a reasonable basis for concluding that this incident was an
accident. (2) See id. at 452. While C.J. admitted that Friar angered her, she maintained that she
did not know she had hit him until he asked, "Do you realize you just hit me?" The fact that
Friar asked the question is itself revealing. It appears that Friar recognized that C.J. did not even
know she had struck him. AISD personnel who interviewed Friar, C.J., and other witnesses
concluded that this was an accident. If the record contains evidence that would support an
affirmance or reversal of the Board's findings, the Commissioner must affirm the Board's
decision. See id. at 453. The record contains a reasonable basis for the Board's decision that this
incident was an accident. Thus, the Commissioner was correct in affirming the Board's decision.


Conclusion