Opinion issued April 29, 2004












In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01057-CV
____________

UNITED WATER SERVICES, INC., Appellant

V.

THE CITY OF HOUSTON, Appellee




On Appeal from the 280th District Court
Harris County, Texas 
Trial Court Cause No. 2001-60189 




O P I N I O N 

          In this governmental immunity case, United Water Services, Inc. (“United
Water”) appeals the trial court’s order granting the City of Houston’s (“the City”)
plea to the jurisdiction. Of the two issues presented by United Water in this breach
of contract case, the dispositive issue that we address is whether article II, section 1
of the City’s charter expressly and unambiguously waives the City’s immunity from
suit. 
          We reverse and remand.
Background
          The City contracted with United Water to operate and maintain a water
purification plant. After the contract’s term expired, the City claimed that United
Water had breached the contract and refused to pay United Water for the services that
United Water had provided under the contract. The City also submitted a claim to
Continental Insurance Company (“CNA”), the surety that issued a performance bond
on the contract, asserting that United Water’s breach of contract had caused the City
to incur damages. 
          United Water filed the underlying suit against the City, alleging breach of
contract and seeking in excess of $900,000 in damages. United Water also sought a
declaratory judgment that it did not breach the contract. The City filed a counterclaim
against United Water for breach of contract and also filed a separate suit against CNA
in federal court.
          The City then filed a plea to the jurisdiction, asserting that it was immune from
suit. In response, United Water amended its petition, alleging that the Legislature
waived the City’s immunity by enacting Local Government Code section 51.075,
which states with regard to home-rule cities, “The municipality may plead and be
impleaded in any court.”


 United Water further asserted that the language in the
City’s charter, which states that the City “may sue and be sued . . . implead and be
impleaded in all courts and places and in all matters whatever . . . .,”


 also waived the
City’s immunity from suit. Additionally, United Water asserted that the City waived
immunity from suit by filing its counter-claim in the instant suit and by filing suit
against CNA in federal court. Alternatively, United Water argued that the City
waived suit by accepting the benefits of the contract.
          The trial court granted the City’s plea to the jurisdiction and dismissed United
Water’s claims for want of subject matter jurisdiction.


 United Water appeals the trial
court’s order. 
Standard and Scope of Review
          Subject-matter jurisdiction is essential for a court to have the authority to
resolve a case. Tex. Ass’n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 443 (Tex.
1993). The plaintiff has the burden to plead facts affirmatively showing that the trial
court has subject-matter jurisdiction. Id. at 446. A party may challenge a court’s
subject-matter jurisdiction by filing a plea to the jurisdiction. See Tex. Dep’t of
Transp. v. Jones, 8 S.W.3d 636, 638-39 (Tex. 1999). As a question of law, we review
the trial court’s ruling on such a plea de novo. Mayhew v. Town of Sunnyvale, 964
S.W.2d 922, 928 (Tex. 1998). In conducting this de novo review, we do not look at
the merits of the plaintiff’s case but consider only the plaintiff’s pleadings and the
evidence pertinent to the jurisdictional inquiry. County of Cameron v. Brown, 80
S.W.3d 549, 555 (Tex. 2002). We construe the pleadings liberally in favor of
conferring jurisdiction. Tex. Dept. of Transp. v. Ramirez, 74 S.W.3d 864, 867 (Tex.
2002). 
General Principles of Sovereign Immunity


 
          Sovereign immunity protects the State, its agencies and officials, and political
subdivisions of the State from suit, unless immunity from suit has been waived. Gen.
Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001). The
sovereign immunity of the State inures to the benefit of a municipality insofar as the
municipality engages in the exercise of governmental functions, except when that
immunity has been waived.


 See Fort Worth Indep. Sch. Dist. v. City of Fort Worth,
22 S.W.3d 831, 840 (Tex. 2000); City of Tyler v. Likes, 962 S.W.2d 489, 501 (Tex.
1997); see also City of Houston v. Rushing, 39 S.W.3d 685, 686 (Tex.
App.—Houston [1st Dist.] 2001, pet. denied) (stating, “The City of Houston, as a
home-rule municipality, is generally immune from both suit and liability in its
governmental functions.”).
          Governmental immunity encompasses two principles: (1) immunity from suit
(barring a lawsuit unless the Legislature expressly gives its consent to suit), and (2)
immunity from liability (protection from judgments even if the Legislature has
expressly given its consent to the suit). Travis County v. Pelzel & Assocs., Inc., 77
S.W.3d 246, 248 (Tex. 2002). By entering into a contract, a governmental entity
waives immunity from liability for breaching that contract but does not waive
immunity from suit by entering into a contract. See Catalina Dev., Inc. v. County of
El Paso, 121 S.W.3d 704, 705 (Tex. 2003); Little-Tex Insulation, 39 S.W.3d at 594;
Dillard v. Austin Indep. Sch. Dist., 806 S.W.2d 589, 592 (Tex. App.—Austin 1991,
writ denied).
          A plaintiff has the burden to establish a waiver of immunity from suit. Jones,
8 S.W.3d at 638. Immunity from suit can be waived only by legislative consent or
constitutional amendment. Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 695
(Tex. 2003). The Texas Supreme Court has repeatedly reaffirmed that such waiver
must be expressed by clear and unambiguous language. Taylor, 106 S.W.3d at 696;
Pelzel, 77 S.W.3d at 248; Tex. Natural Res. Conservation Comm’n v. IT-Davy, 74
S.W.2d 849, 854 (Tex. 2002); City of La Porte v. Barfield, 898 S.W.2d 288, 291
(Tex. 1995); Duhart v. State, 610 S.W.2d 740, 742 (Tex. 1980); see also Tex. Gov’t
Code Ann. § 311.034 (Vernon Supp. 2004) (providing, “In order to preserve the
legislature’s interest in managing state fiscal matters through the appropriations
process, a statute shall not be construed as a waiver of sovereign immunity unless the
waiver is effected by clear and unambiguous language.”). 
Clear and Unambiguous Waiver Language
          In its first issue, United Water contends that the City’s immunity from suit is
waived by the clear and unambiguous language of Local Government Code section
51.075, which states, “The municipality may plead and be impleaded in any court,”



and article II, section 1 of the City’s charter, which provides that the City “may sue
and be sued . . . in all courts and places and in all matters whatever . . . .”


 In
conducting our de novo review of this issue, we must first determine whether the
language of either the City’s charter or Local Government Code section 51.075
clearly and unambiguously waives the City’s immunity to suit. 
A.      “Sue and be Sued” Provisions: Missouri Pacific Remains the Law 
          With regard to the “sue and be sued” language found in the City’s charter, such
determination has already been made by our supreme court in Missouri Pacific
Railroad Co. v. Brownsville Navigation District, 453 S.W.2d 812, 813 (Tex. 1970).
The Missouri Pacific court held that a statute which provides that a certain state entity
can “sue and be sued” meets the legislative permission requirement that waives
immunity from suit. Id. We are bound by such precedent. 
          The Missouri Pacific case arose when a brakeman for Missouri Pacific
Railroad died after being knocked from a train ladder by a crane that had been left too
close to the track. Id. at 812-13. The brakeman’s beneficiaries sued Missouri Pacific,
which filed a cross-action for indemnity against the Brownsville Navigation District. 
Id. The cross-action was based on a contract between Missouri Pacific and the
navigation district that prohibited the district from allowing certain objects to be
placed near the track. Id. The trial court granted the district’s plea to the jurisdiction
on the basis that the district was a subdivision of the State and that consent to suit had
not been given. Id. at 813. The court of civil appeals affirmed. Id.
          In its opinion, the supreme court noted in Missouri Pacific that the navigation
district was governed by a provision of a 1925 act that provided as follows: “All
navigation districts established under this Act may, by and through the navigation and
canal commissioners, sue and be sued in all courts of this State in the name of such
navigation district.” Id. at 812-13 (emphasis added). At issue was whether the phrase
“sue and be sued” was a waiver of the district’s immunity from suit. Reversing the
court of appeals, the Missouri Pacific court concluded, “In our opinion [the
navigation district statute] is quite plain and gives general consent for District to be
sued in the courts of Texas in the same manner as other defendants.” Id. (emphasis
added). By its holding, the Missouri Pacific court rejected the district’s argument that
other statutes more clearly expressed the legislature’s consent to suit. Id.
          Recognizing Missouri Pacific as binding precedent, other appellate courts have
found that similar “sue and be sued” provisions supply the requisite consent to sue
the subject governmental entity. See, e.g., Alamo Cmty. Coll. Dist. v. Browning
Const. Co., No. 04-02-0808, 2004 WL 60975, at *4 (Tex. App.—San Antonio Jan.
14, 2004, pet. filed) (holding that “sue and be sued” language in Education Code
subsection 11.151(a) waives immunity to suit); Goerlitz v. City of Midland, 101
S.W.3d 573, 577 (Tex. App.—El Paso 2003, pet. filed) (concluding that city charter
provision that permitted city to “sue and be sued” waived immunity from suit);
Tarrant County Hosp. Dist. v. Henry, 52 S.W.3d 434, 449 (Tex. App.—Fort Worth
2001, no pet.) (holding Health Code subsection 281.056(a) “sue and be sued”
language waived immunity from suit); Bates v. Tex. State Technical Coll., 983
S.W.2d 821, 827 (Tex. App.—Waco 1998, pet. denied) (holding that Education Code
section 135.55 which states that “board may sue, and be sued,” grants consent to sue
Texas State Technical College System); Engelman Irrigation Dist. v. Shields Bros.,
Inc., 960 S.W.2d 343, 348 (Tex. App.—Corpus Christi 1997) (concluding that“sue
and be sued” language in Water Code section 58.098 “provided clear and
unambiguous consent for the Irrigation District to be sued”), pet. denied per curiam,
989 S.W.2d 360 (Tex. 1998); Loyd v. ECO Res., Inc., 956 S.W.2d 110, 122-23 (Tex.
App.—Houston [14th Dist.] 1997, no pet.) (holding Water Code provision stating that
water district could sue and be sued waived immunity from suit); Knowles v. City of
Granbury, 953 S.W.2d 19, 23 (Tex. App.—Fort Worth 1997, pet. denied) (“As a
home-rule municipality, Granbury may sue and be sued. Had it wanted to exempt
itself from liability, it could have . . . . Because the Local Government Code and
Granbury’s charter provide that the city may be sued, its immunity from suit is [ ]
waived.”); Dillard, 806 S.W.2d at 594 (recognizing Education Code section
providing that school district trustees may sue and be sued waived immunity from
suit).
          We also recognize that several appellate courts have failed to follow Missouri
Pacific and have held that “sue and be sued” provisions do not waive the
governmental entity’s immunity from suit. See, e.g., City of Dallas v. Reata Constr.
Corp., 83 S.W.3d 392, 398 (Tex. App.—Dallas 2002), rev’d on other grounds, No.
02-1031, 47 Tex. Sup. Ct. J. 408 (Tex. April 2, 2004); Jackson v. City of Galveston,
837 S.W.2d 868, 871 (Tex. App.—Houston [14th Dist.] 1992, writ denied);
Townsend v. Mem. Med. Ctr., 529 S.W.2d 264, 267 (Tex. Civ. App.—Corpus Christi
1975, writ ref’d n.r.e.); Childs v. Greenville Hosp. Auth., 479 S.W.2d 399, 401 (Tex.
Civ. App.—Texarkana 1972, writ ref’d n.r.e.). 
          The City relies on the Dallas Court of Appeals’ holding in Reata to support its
position that the “sue and be sued” language at issue does not waive its immunity to
suit; rather, the City argues that such language relates to the City’s capacity to sue or
be sued once immunity has been waived.


 Reata, 83 S.W.3d at 398 (holding “sue and
be sued” language “simply speak[s] to the City’s capacity to sue when immunity has
been waived.”).



          We note that Reata fails to distinguish, or even to mention, Missouri Pacific’s
holding that “sue and be sued” language plainly waives immunity. Instead, Reata
cited Jackson as the authority supporting its holding. Id. (citing Jackson, 837 S.W.2d
at 871). Significantly, the Fourteenth Court of Appeals recently declined to follow
its earlier holding in Jackson in determining whether the “plead and be impleaded”
language found in Local Government Code section 51.075 waives the City of
Houston’s immunity from suit. City of Houston v. Clear Channel Outdoor, Inc., No.
14-03-00022, 2004 WL 63561 at *4 (Tex. App.—Houston [14th Dist.] Jan. 15, 2004,
no pet. h.). Instead, the Clear Channel court chose to following the supreme court’s
holding in Missouri Pacific, which it noted “remains good law,” and “the majority of
intermediate appellate courts” that have held “sue and be sued” language provides
legislative consent for suit. Id. 
          In analyzing Reata, we also note that the Jackson court’s holding that a “sue
and be sued” provision did not “impliedly” waive a city’s immunity was based,
without analysis, on Townsend and Childs. Jackson, 837 S.W.2d at 871 (citing
Townsend, 529 S.W.2d at 267 and Childs, 479 S.W.2d at 401). The Townsend court
relied solely on Childs, which in turn relied exclusively on pre-Missouri Pacific cases
to support its holding that a “sue and be sued” provision did not waive a hospital
district’s immunity from suit. Townsend, 529 S.W.2d at 267; Childs, 479 S.W.2d at
401. For these reasons, we decline to follow Reata.
          The Dallas Court of Appeals revisited the issue of whether “sue and be sued”
language waives immunity from suit in Satterfield & Pontikes Constr., Inc. v. Irving
Indep. Sch. District, 123 S.W.3d 63 (Tex. App.—Dallas 2003, pet. filed.). Relying
on Reata, the Satterfield court held that the “sue and be sued” language found in
section 11.151 of the Education Code “merely ‘speak[s] to the City’s . . . capacity to
be sued when immunity has been waived.’” Id. at 66 (quoting Reata, 83 S.W.3d at
398). The Satterfield court also noted, “At least one commentator has suggested that
because ‘sue and be sued’ language originated in the corporate law context, these
provisions can easily be read as a designation to give a particular entity a legal
existence in the courts.” Id. (citing George C. Kraehe, “There’s Something About
Cities”: Understanding Proprietary Functions of Texas Municipalities and
Governmental Immunity, 32 Tex. Tech. L. Rev. 1, 35-36 (2000)); see also A. Craig
Carter, Is Sue and Be Sued Language a Clear and Unambiguous Waiver of
Immunity?, 35 St. Mary’s L. J. 275, 289-300 (2004) (asserting that “sue and be sued”
language refers to an entity’s capacity to be sued).
          Unlike Reata, the Satterfield court directly addressed the holding in Missouri
Pacific, stating that “the supreme court has since departed from the logic of Missouri
Pacific in the three decades following that decision.” Satterfield, 123 S.W.3d at 67. 
The Satterfield court posited that the supreme court’s holdings in Pelzel and Taylor
abrogated its holding in Missouri Pacific. See id. (citing Pelzel, 77 S.W.3d 246, 249
(Tex. 2002) and Taylor, 106 S.W.3d at 700)). In this regard, the Satterfield court
reasoned as follows:
Both Pelzel and Taylor listed several examples of clear and
unambiguous expressions of the Legislature’s intent to waive immunity
from suit. Notably, neither of these supreme court cases presented a
“sue and be sued” statute as an example of a clear and unambiguous
waiver of immunity of suit.
Satterfield, 123 S.W.3d at 67 (internal citations omitted).
          We disagree with the Satterfield court’s reasoning that the supreme court’s lack
of citation to “sue and be sued” statutes as an example of a clear and unambiguous
waiver of immunity of suit in Pelzel and Taylor serves to implicitly overrule Missouri
Pacific.


 To the contrary, the supreme court in Pelzel discussed Missouri Pacific,
noting that the statute at issue, Local Government Code section 89.004, was
distinguishable from the one in Missouri Pacific because it did not contain “sue and
be sued” language. Pelzel, 77 S.W.3d at 249-50. In this regard, the supreme court
in Pelzel observed that the predecessor statute to section 89.004 had contained “sue
and be sued language,” which was deleted in 1879. Id. Implicitly referring to
Missouri Pacific, the court stated, “Thus well over a hundred years ago, the
Legislature deleted the only language arguably waiving sovereign immunity,
suggesting that it intended to preserve counties’ immunity from suit.” Id. at 250. 
          The Pelzel court then engaged in the following detailed discussion of Missouri
Pacific:
In Missouri Pacific, we held that a statute applicable to navigation
districts “is quite plain and gives general consent for District to be sued
in the courts of Texas.” The statute stated that navigation districts “may,
by and through the navigation and canal commissioners, sue and be sued
in all courts of this State in the name of such navigation district, and all
courts of this State shall take judicial notice of the establishment of all
districts.” In response to the district’s argument that other statutes had
more clearly expressed consent to suit, we noted that ‘suits against
counties have been held to be authorized by statutes that simply require
the filing of a claim before institution of suit.’ But Missouri Pacific
involved a different statute than the one in this case and that statute,
unlike the current version of the statute here, contained “sue and be
sued” language.


 
Id. at 251 (citations omitted). Thus, rather than overruling its prior holding in
Missouri Pacific, the supreme court in Pezel distinguished the “sue and be sued”
language found by the Missouri Pacific court to “quite plain[ly]” waive immunity
from suit from the ambiguous expression of legislative waiver of immunity found in
Local Government Code section 89.004. Id. at 250. 
          We acknowledge that the Satterfield court correctly recognized that Taylor
does not reference Missouri Pacific. Although we do not interpret that omission to
be indicative that Missouri Pacific is no longer binding authority, we do recognize
that Taylor cannot be ignored. At issue in Taylor was whether the Legislature waived
a state hospital’s consent to suit by enacting the patient’s bill of rights statute, which
provides that a person who is harmed by a mental health facility’s violation of the
patient’s bill of rights may sue for injunctive relief, damages, or both. See Taylor,
106 S.W.3d at 698-99. The Taylor court stated that “we have little difficulty
recognizing the Legislature’s intent to waive immunity from suit when a statute
provides that a state entity may be sued or that “sovereign immunity to suit is
waived.’” Id. at 696-97 (emphasis added). The court then noted that the patient’s bill
of rights statute did not contain such explicit language. Id. at 697.
          In the absence of explicit waiver language, the Taylor court outlined the
following factors for a court to consider in determining whether a statute waives
immunity: (1) the statute in question must waive immunity “beyond doubt”; (2)
ambiguities are generally resolved in favor of immunity; (3) if the Legislature
requires the joinder of a governmental entity in a suit for which immunity would
otherwise attach, the Legislature has waived immunity; and (4) if the Legislature
simultaneously enacts legislation limiting the governmental unit’s potential liability,
a waiver of immunity may be found. Id. at 697-98. 
          As mentioned throughout this opinion, the supreme court held in Missouri
Pacific that “sue and be sued” language “quite plain[ly]” waives immunity from suit
and “gives general consent” for the governmental entity to be sued. Mo. Pac., 453
S.W.2d at 813-14. Therefore, we need not, and should not, apply the Taylor factors
to the City charter provision at issue in this case because, as determined by the
supreme court in Missouri Pacific, the provision contains explicit waiver language. 
          While we acknowledge that the area of waiver of governmental immunity is an
evolving one, we cannot agree with the Satterfield court that Missouri Pacific has
been overruled. See Satterfield, 123 S.W.3d at 70 (Lang, J., dissenting) (criticizing
majority opinion for improperly concluding that Missouri Pacific has been effectively
overruled). As an intermediate court of appeals, we must follow our supreme court’s
expressions of the law and leave changes in the application of common-law rules to
that higher authority. See Lubbock County v. Trammel’s Lubbock Bail Bonds, 80
S.W.3d 580, 585 (Tex. 2002) (“It is not the function of a court of appeals to abrogate
or modify established precedent. That function lies solely with [the Supreme]
Court.”); Lofton v. Tex. Brine Corp., 777 S.W.2d 384, 386 (Tex. 1989) (“This court
need not defend its opinions from criticism from courts of appeals; rather they must
follow this court’s pronouncements.”). Because Missouri Pacific remains the law of
this state, we are bound to follow its holding that “sue and be sued” language waives
immunity from suit. See Clear Channel Outdoor, No. 14-03-00022, 2004 WL 63561
at *1-*2 (recognizing that Missouri Pacific remains good law and applying its
holding); Webb v. City of Dallas, 314 F.3d 787, 795-96 (5th Cir. 2002) (refusing to
certify to Texas Supreme Court question of whether “sue and be sued” language
waived City of Dallas’s immunity from suit because controlling authority from
supreme court, i.e, Missouri Pacific, already addressed issue). 
B.      Ambiguity of Waiver Language Found in City Charter Article II, Section 1
          The City also contends that the “sue and be sued” language found in its charter
is distinguishable from the “sue and be sued” language found in Missouri Pacific and
from other “sue and be sued” provisions that have been held to waive immunity from
suit. The City argues that, when read within the context of the entirety of article II,
section 1, the charter’s “sue and be sued” language no longer provides a clear and
unambiguous waiver of immunity from suit. Specifically, the City relies on language
appearing at the end of article II, section 1, which provides that the City “shall enjoy
all rights, immunities, powers, privileges, and franchises now possessed and enjoyed
by said City and herein granted and conferred.”


 City of Houston Charter, art.
II, § 1 (Act of 1905). The City asserts that such language serves to abrogate the
waiver effect of the “sue and be sued” language found at the beginning of article II,
section 1. The City contends that, because the charter appears to waive immunity
from suit while simultaneously retaining all immunities “now possessed,” an
ambiguity exists whether immunity from suit is expressly waived. To determine the
validity of the City’s contention, the relevant inquiry becomes whether the City
“possessed” immunity from suit when article II, section 1 was enacted in 1905. 
Stated differently, if the City did not possess immunity from suit in 1905 when the
current charter provision was enacted, then the “sue and be sued” language found in
the charter operates as a clear and express waiver of the City’s immunity from suit
under the holding of Missouri Pacific. To make this determination, a historical
analysis of the charter is useful.
          As noted by one scholar, “[f]rom 1836 to 1912 the major cities in Texas were
created by a special act of the Texas congress or legislature.” 22 David B. Brooks,
Texas Practice: Municipal Law and Practice § 1.16 (2d ed. 1999). Incorporated
in 1836, Houston was no exception. See Act approved June 5, 1837, 1st Cong., R.S.,
§ 10, 1836-1837 Repub. Tex. Laws 238, 239, reprinted in 1 H.P.N. Gammel, The
Laws of Texas 1822-1897, at 1298, 1299 (Austin, Gammel Book Co. 1898). During
this same period, the state Legislature frequently amended and replaced the special
charters granted to Texas cities. 22 David B. Brooks, Texas Practice: Municipal
Law and Practice § 1.16.
          In 1839, the Third Congress of the Republic of Texas granted the City a
charter, which provided that the City was “capable of suing and being sued, and
defending in all courts and in all actions and matters whatsoever.” Act approved Jan.
28, 1839, 3rd Cong., R.S., § 1, 1839 Repub. Tex. Laws 94, 94, reprinted in 2 H.P.N.
Gammel, The Laws of Texas 1822-1897, at 94, 94 (Austin, Gammel Book Co.
1898). The Texas Legislature retained similar “sue and be sued” provisions in the
charters it granted the City in 1866, 1870, 1874, 1893, 1903, and 1905.


 
          In 1912, the “home-rule amendment” of the Texas Constitution was passed,
which authorized cities with more than five thousand inhabitants to adopt a home-rule
charter. See Tex. Const. art. XI, § 5. The home-rule amendment “altered the
longstanding practice of having special charters individually granted and amended
by the legislature” for the State’s larger cities. 22 David B. Brooks, Texas
Practice: Municipal Law and Practice § 1.17. 
          The City’s charter reflects that many of its provisions, including article II,
section 1, originated in the 1905 charter granted by the Legislature. See City of
Houston Charter, art. II, § 1. These provisions were later adopted by the City
pursuant to its home-rule status. Tex. Const. art. XI, § 5. Thus, the language that
we find in article II, section 1 of the charter today is identical to the language
contained in article II, section 1 of the charter granted to the City by the Legislature
in 1905. Compare City of Houston Charter, art. II, § 1 with Act of March 18,
1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131. 
          Because it was the last charter granted by the Legislature to the City prior to
1905, the 1903 charter is of particular relevance to our analysis in determining
whether the City “possessed” immunity from suit when the Legislature granted the
1905 charter. Importantly, article II, section 1 of the 1903 charter expressly waived
the City’s immunity from suit and read as follows:
The City of Houston, made a body politic and corporate by this Act,
shall have perpetual succession, may use a common seal, sue and be
sued, and for any purpose which it deems necessary or expedient for the
public interest, perform and render all public services and acquire
property within or without the city limits by purchase, gift, device or by
condemnation proceedings, and hold, manage and control the same, such
condemnation proceedings to be governed and controlled by the law
now in force in reference to the condemnation of the right of way of
railroad companies and the assessment of damages therefor.
Act of April 21, 1903, 28th Leg., R.S., ch. XX, art. II, § 1, 1903 Tex. Spec. Laws 97,
98. (emphasis added). 
          That the City “shall enjoy all rights, immunities, powers, privileges, and
franchises now possessed” was added by the Legislature to article II, section 1 for
first the time in 1905. Because the Legislature had expressly waived the City’s
immunity from suit in 1903, the City did not “possess” such immunity when the
charter, including article II, section 1, was amended in 1905. Accordingly, we hold
that the “sue and be sued” language found in article II, section 1 of the charter is a
clear and unambiguous waiver of the City’s immunity from suit. 
C.      The City’s Authority to Waive Immunity from Suit
          Lastly, we address the City’s contention that the charter cannot serve to waive
its immunity from suit because only the Legislature, not the City, can waive immunity
from suit. As discussed in the preceding section, it was the Legislature who
originally waived the City’s immunity from suit when it enacted article II, section 1
as part of the 1905 special act granting the City a new charter. Act of March 18,
1905, 29th Leg., R.S., ch. 17, art. II, § 1, 1905 Tex. Spec. Laws 131, 131. After
obtaining home-rule status, the City adopted that provision. See City of Houston
Charter, art. II, § 1. Since its adoption, article II, section 1 has not been amended
or repealed by the City. See id. Thus, because it was, indeed, the Legislature who
originally waived the City’s immunity from suit, we need not address the issue of
whether the City, itself, can waive immunity from suit. 
          Because we have held that the “sue and be sued” language found in its charter
waives the City’s immunity from suit, we need not address whether Local
Government Code section 51.075, which provides that home-rule municipalities may
“plead and be impleaded,” also waives the City’s immunity from suit.


 See Tex. R.
App. P. 47.1 (stating court of appeals must hand down an opinion that addresses every
issue raised and necessary to final disposition of appeal). 
          We sustain United Water’s first issue to the extent that it contends that the
City’s charter waives the City’s immunity from suit.


 
 

Conclusion
          We reverse the order of the trial court dismissing United Water’s claims against
the City and remand the cause to the trial court.




                                                             Laura Carter Higley
                                                             Justice

Panel consists of Chief Justice Radack and Justices Jennings and Higley.